MERRITT, Circuit Judge,
dissenting.
Our court’s opinion in this case, in my judgment, is wrong and further establishes a split in the circuits on the preference issue in mortgage refinancing transactions. I agree with the District Court and the Eighth Circuit in In re: Heitkamp, 137 F.3d 1087 (8th Cir.1998), that we should look to the purpose, consequences, details, and common sense of the complete financing transaction at issue here and not just one little part of the transaction, i.e., the recording of the second mortgage more than 10 days after the execution of the second note and mortgage. We should look to see whether anyone was misled or whether the bankruptcy estate was diminished for reasons prohibited by Congress.
What happened here is that a lender (Chase) received a new promissory note and mortgage deed from the debtor on October 6, 2003, arising from the refinancing of an old mortgage. But the lender did not get the old mortgage “discharge” document formally recorded on the books of the Register of Deeds for over three months. And it did not get the new mortgage recorded for over two months. If one does not want to look at the reality of the situation but only at bankruptcy legalisms, then the lender should be viewed as retaining an old, non-discharged, 2-1/2 year-old mortgage on the books of the Register of Deeds office for a month after the new mortgage was recorded. No one doing even a cursory title search could have failed to see that the lender had a mortgage on the property from long before the debtor’s bankruptcy. No creditor, secured or unsecured, could have possibly been misled into believing that the lender did not have a mortgage on the debtor’s property or into believing that the debtor owned his house free and clear. From early 2001 until January 16, 2004, the records at the public mortgage office showed an original, non-discharged mortgage and from December 17, 2003, to January 16, 2004, the title search would have shown simultaneously both the old and the new mortgage on the property. Based on the public record, unsecured creditors would have known that the house was mortgaged *475 throughout the period. No one was misled, and from 2001 forward the estate was never increased by the value of a house free and clear of a mortgage and hence never diminished for unsecured creditors, either on the public record or in the private transaction, because a valid mortgage on the property always existed. So it seems to me mere legalistic manipulation of the language of §§ 547(b) and (e) to arrive at the conclusion that the mortgage and the house should be treated as a preference and set aside — taking the mortgage security away from the lender who had simply agreed to lighten the load on the debtor by reducing his interest rate by 2% so that he could perhaps pay his debts. (Apparently, “no good deed goes unpunished.”) There was always a “perfected” (ie., publicly recorded) mortgage in place. I, therefore, dissent from the Court’s decision that misinterprets the Bankruptcy Code in my opinion and reaches an unjust and unlawful result by arbitrarily causing the lender to lose the entire value of a perfectly valid mortgage for money the lender had advanced to the debtor in good faith. No unsecured creditor ever had the slightest basis to believe that he would be entitled to recover his debt from mortgage proceeds. Appellate judges should be aware that subtle incentives exist for trustees to enlarge the bankruptcy estate for a number of reasons — for example, trustees draw additional fees when the estate is enlarged. We must look carefully at interpretations of provisions of the code that enlarge the estate at the expense of secured creditors. In this case, I do not believe it is justified.